# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **JESSIE GREEN**, | **18-CV-13452-TGB** |
| Petitioner, | **ORDER**<br>**(1)DENYING THE PETITION FOR WRIT OF HABEAS CORPUS;** |
| vs. | **(2) GRANTING THE MOTION TO AMEND CAPTION (ECF NO. 24);** |
| **WILLIS CHAPMAN[1]**, | **(3) DENYING THE REMAINING PENDING MOTIONS (ECF NOS. 18, 20, 21, 23);** |
| Respondent. | **(4) DENYING A CERTIFICATE OF APPEALABILITY, AND**<br>**(5) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS** |

Jessie Green, ("Petitioner"), confined at the Thumb Correctional Facility in Lapeer, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for unlawful imprisonment, M.C.L.A. § 750.349b; attempted assault by strangulation, M.C.L.A. §§ 750.84(1)(b); 750.92; felonious assault, M.C.L.A. § 750.82,

---

[1] The Court grants petitioner's motion to amend caption (ECF No. 24). The caption in this case is amended to reflect that the proper respondent in this case is now Willis Chapman, the warden of the prison where petitioner is currently incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254.

1

and felony-firearm, M.C.L.A. § 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's case from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F. 3d 410, 413 (6th Cir. 2009):

> This case arises from the assault of Symphony Whitney on December 19, 2013, in Detroit, Michigan. Whitney, who was 16 years old at the time of the assault, was walking to school between 8:00 a.m. and 8:30 a.m. As she walked along the sidewalk, she approached a vacant house. A green van was parked in the driveway of the house and partially on the sidewalk, forcing Whitney to walk around the vehicle. The van's passenger side was closest to Whitney as she approached the vehicle.
>
> Whitney walked around the front of the van and immediately saw defendant kneeling down by the driver's side door. He was dressed all in black and wore a ski mask, although he had pulled the mask up so that it only covered his forehead. Whitney only saw defendant's face "[f]or a short moment" before he pulled the mask down over his face, jumped to his feet, and grabbed her. Whitney fell in the snow and began screaming. Defendant pulled her up by the neck, then put her in a chokehold with his right arm. Whitney continued to

scream and struggle to escape. Defendant's right arm was across Whitney's neck, but she was able to breathe and scream for help. She was not, however, able to get away or remove his arm. While Whitney testified that defendant did not pull her toward the van, testimony from two other witnesses admitted at defendant's trial established that defendant pulled her toward the vehicle.

With his right arm still around Whitney's neck, defendant pulled out a black gun with his left hand and pointed it at her and menacingly told her to shut up. Whitney continued to scream. A white work van passed the two as they struggled, then the driver, Calvin White, stopped, backed the vehicle up, and got out of the van. Earl Jackson, who was visiting at the house across the street, heard the commotion, looked out the window, and saw a man in black with a ski mask struggling with Whitney. Jackson ran outside with his weapon drawn.

Whitney removed from her pocket the mace she usually carried when she walked to school, eventually sprayed it at defendant while they struggled, and managed to break free and run toward Wright's work van. Jackson saw defendant run away. Neither Wright nor Jackson saw a gun in defendant's possession.

Wright let Whitney sit inside his van while he tried to see which way defendant had run. Whitney called her father, and a woman who had emerged from another nearby house called 911. Jackson approached the green van and took the keys out of the ignition. Detroit Police officers arrived a few minutes later. When Whitney's father arrived at the scene, she told him that her neck hurt.

Detroit Police Officer Charles Howard was working an undercover surveillance detail on a breaking-and-entering task force that morning. He responded to the dispatch call reporting an attempted abduction. Detroit Police officers who

were already at the scene ran the green van's license plate through the Law Enforcement Information Network (LEIN), which revealed defendant's name and an address in Harper Woods. Officer Howard drove to the Harper Woods address in his unmarked police car, arriving there shortly after 9:00 a.m.. Officer Howard saw a black Ford and a blue Buick in the driveway. The Ford was registered to Henrietta Barber at an address on Farmbrook Street, and the Buick was registered to defendant and Velvatine Jones at an address on Nottingham Road in Detroit. The Farmbrook address was approximately eight blocks away from the scene of the assault on Whitney.

About 30 minutes after Officer Howard arrived at the Harper Woods address, he saw a woman drive the Ford out of the driveway. The Ford circled the block a couple of times. About ten minutes later, he saw a man drive the Buick out of the driveway. Both vehicles proceeded to the Farmbrook address and Officer Howard also went to that location.

Officer Howard maintained surveillance at the Farmbrook address for approximately 30 minutes before defendant came out of the house with his girlfriend, Vernell Fleming. Defendant and Fleming got into the Buick and drove away. Defendant was driving. Officer Howard radioed for assistance, and a waiting marked car stopped defendant.

Detroit Police Officer Jeremiah Orvelo was in the marked car that stopped defendant. During the stop, Officer Orvelo's partner recovered a handgun from defendant's side of the Buick. Defendant carried a valid Carry Pistol License (CPL), but the officers confiscated the weapon for safekeeping. Officer Orvelo did not arrest defendant because Detroit Police Sergeant Jose Ortiz told the officers to ask defendant to come to the police station for questioning.

Later that day, Detroit Police Officer Jeffery Manson assembled a photographic lineup for Whitney to identify her attacker. Officer Manson placed defendant's driver's license picture, which he had obtained from LEIN, in the sixth position in the lineup. The picture on defendant's driver's license was three years old at the time. Officer Manson took the other five pictures from the Michigan Sex Offenders Registry because the backgrounds of the pictures were similar to the background of defendant's driver's license picture.

Whitney, meanwhile, came to the police station to meet with a composite sketch artist. While there, she described her attacker as being around 6 feet tall, skinny, brown-skinned with a medium complexion, and about 30 years old. When the sketch was complete, she asked the artist to add in a beard to more accurately reflect her attacker's appearance.

After Whitney's meeting with the sketch artist, Sergeant Ortiz showed her the photographic lineup. Whitney said that the man in the fourth position looked familiar, but that she was not sure he was the man who attacked her. Unbeknownst to Whitney, the man in the fourth position had been incarcerated at the time of the assault.

Later that same day, defendant arrived at the police station for an interview. Sergeant Ortiz interviewed him and noted that defendant looked different and younger in his driver's license picture than in person. Sergeant Ortiz took a picture of defendant with his cell phone and sent the picture to Officer Manson for inclusion in a second photographic lineup. During the interview, defendant stated that he had inadvertently left the keys in the green van that morning, and that he had last seen the van in the driveway of the Harper Woods address. Defendant maintained that Fleming had been with him all

morning and that they had driven together in the Buick to the Nottingham address, then to the Farmbrook address.

On December 20, 2013, Officer Manson went to Whitney's house with the second photographic lineup. He had replaced the other five photographs with photographs of individuals who more closely reflected defendant's different appearance in the new picture that Sergeant Ortiz had taken. He believed that it would have been unduly suggestive to have used the same pictures from the first lineup given that they did not look like the new picture of defendant. Defendant's new picture was now in the fourth position. Whitney only looked at the photographs for "a matter of seconds" and, when asked, indicated that she recognized number four. Whitney wrote, "I think he's the one who attacked me," and, "He tried to kidnap me," on the photographic lineup.

Later that day, Officer Manson called defendant to tell him that he could pick up his green van at the police station. Officer Manson arrested defendant when he arrived. Detroit Police officers never recovered defendant's gun, however, because defendant had reclaimed it the previous day and because it was not on his person when Officer Manson arrested him.

*People v. Green*, No. 321519, 2015 WL 5311660, at * 1–3 (Mich. Ct. App. Sept. 10, 2015) (internal footnote omitted).

Petitioner's conviction was affirmed on direct appeal. *Id., lv. den.* 499 Mich. 915, 877 N.W. 2d 895 (2016).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Green,* No. 14-000470-01-FH (Third Cir. Ct.,

Nov. 28, 2016). The Michigan appellate courts denied petitioner leave to appeal. *People v. Green,* No. 337063 (Mich. Ct. App. July 13, 2017); *lv. den.* 501 Mich. 1080, 911 N.W.2d 713 (2018), *reconsideration den.*, 503 Mich. 862, 917 N.W.2d 369 (2018).

Petitioner in his original and amended habeas petitions seeks habeas relief on the following grounds: (1) Petitioner is entitled to immediate release where there was police and prosecutor misconduct resulting in extrinsic fraud on the court to confer jurisdiction, (2) the photographic identification procedure was unduly suggestive,[2] (3) petitioner was denied the effective assistance of trial counsel, and (4) petitioner was denied the effective assistance of appellate counsel.

## II. LEGAL STANDARD

28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[2] Petitioner excluded this claim from his initial habeas petition but later asked to include this claim in his motion to amend or correct the record. (ECF No. 11). This Court subsequently granted petitioner's motion to amend his petition to include this claim. (ECF No. 19, PageID. 1720).

established Federal law, as determined by the
Supreme Court of the United States; or
(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required

to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. Discussion

### A. Claim # 1. The illegal arrest/jurisdiction claim

Petitioner first alleges that the trial court lacked jurisdiction over his case because the police and prosecutor committed fraud on the state court by knowingly presenting false information to a judge to obtain his arrest warrant. Petitioner refers to a statement in a police report that was submitted to the prosecutor's office as part of a request to bring charges. *See* ECF No.1, Page ID. 109. In the report, the writer states that the victim positively identified petitioner as the man who assaulted her. Petitioner claims that statement is false because the victim's second identification was merely "tentative."

Petitioner challenged the legality of his arrest in his post-conviction motion for relief from judgment. The judge denied the motion, finding that there was probable cause to arrest petitioner. *People v. Green,* No.

14-000470-01-FH, *2 (Third Cir. Ct., Nov. 28, 2016) (ECF No. 8-14, PageID. 1266).

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his or her claims, not whether he or she in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas

petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F.2d 51, 57 (3rd Cir. 1986)).

Petitioner presented his Fourth Amendment claim in his post-conviction motion for relief from judgment before the trial court and the Michigan appellate courts. Because petitioner was able to raise his illegal arrest claim in his post-conviction motion, petitioner had a full and fair opportunity to raise this Fourth Amendment claim in the state courts and is thus not entitled to habeas relief. *See Hurick v. Woods*, 672 F. App'x 520, 535 (6th Cir. 2016).

Moreover, petitioner failed to show that the police or prosecutor used false information to obtain his arrest warrant. Probable cause for an arrest does not require a perfect identification, and witness identifications are "entitled to a presumption of reliability and veracity." *Legenzoff v. Steckel*, 564 F. App'x 136, 143 (6th Cir. 2014) (internal quotation omitted) (witness's statement that he was 80% positive that Legenzoff was the person who robbed him sufficient to justify arrest); *see also Stahl v. Czernik,* 496 F. App'x 621, 624 (6th Cir. 2012) (probable cause existed to support arrest warrant even if the affidavit for the

warrant omitted that one of the eyewitnesses had qualified his identification by stating that he would be more certain of his identification if he could see the suspect's tattoo). The victim's statement at the second photo show-up that "I think he's the one who attacked me" was sufficient to establish probable cause to issue the arrest warrant.

Finally, petitioner's jurisdictional claim is meritless. "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980) (citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)); *see also Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886). The Supreme Court has held that "[T]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). Although the exclusionary rule prohibits the introduction at trial of evidence that was seized in violation of the constitution, a criminal defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the

introduction of evidence wholly untainted by the police misconduct."
*United States v. Crews*, 445 U.S. at 474. Petitioner does not identify any
evidence other than his own body that was seized during this allegedly
unlawful arrest. Thus, the mere fact that petitioner may have been
arrested on an invalid warrant would not prevent him from being
prosecuted and convicted of this offense. Petitioner is not entitled to
relief on his first claim.

### B. Claim # 2. The suggestive identification claim

Petitioner contends that that the second photographic lineup was
impermissibly suggestive because he was the only suspect included in
both lineups and because petitioner's newer photograph was placed in
the fourth position during the second lineup, the same position in the
first lineup, in which Ms. Whitney had earlier misidentified a suspect.

Due process protects the accused against the introduction of
evidence which results from an unreliable identification obtained
through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S.
220, 227 (1977). To determine whether an identification procedure
violates due process, courts look first to whether the procedure was
impermissibly suggestive; if so, courts then determine whether, under

the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147–48 (E.D. Mich. 1997) (citing to *Neil v. Biggers*, 409 U.S. 188 (1972)). Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200.

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner failed to show that Ms. Whitney's in-court identification was the product of a suggestive pre-trial identification. Indeed, "the

Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004). Moreover, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012).

The mere fact that Ms. Whitney was exposed to successive identification procedures of petitioner did not render her identifications of him unreliable. *See Williams v. Lavigne,* 209 F. App'x 506, 508 (6th Cir. 2006) (Identification procedure, during which witness was shown several lineups and photo arrays, all of which contained defendant's picture, was not unduly suggestive). The fact that petitioner was the only person to appear in both photographic line-ups did not make the second photographic line-up suggestive in light of the fact that different photographs of petitioner were used in each line-up. *See United States v. Watson*, 540 F. App'x 512, 516–17 (6th Cir. 2013). Finally, "the fact that the two photo arrays placed the intended suspect in the same numerical

position is not unduly suggestive." *Wells v. Larose*, No. 1:15 CV 298, 2017 WL 914694, at \*18 (N.D. Ohio Jan. 12, 2017), *report and recommendation adopted*, No. 1:15 CV 298, 2017 WL 898007 (N.D. Ohio Mar. 7, 2017). Petitioner is not entitled to habeas relief on his second claim.

## C. Claims # 3 and # 4.  The ineffective assistance of counsel claims.

Petitioner contends he was denied the effective assistance of trial and appellate counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first appears to argue that his counsel should have objected to the violation of his right to confront witnesses and to compulsory process when the trial court failed to require the arresting officer to testify at a pre-trial evidentiary hearing.

The Sixth Circuit has observed the lack of any legal authority "holding that the Sixth Amendment right to compulsory process applies to pretrial detention hearings." *See United States v. Smith,* 191 F. App'x 383, 388 (6th Cir. 2006). The Supreme Court has likewise referred to a defendant's Confrontation Clause right to confront witnesses as being a "trial right." *See Pennsylvania v. Ritchie,* 480 U.S. 39, 52 (1987) ("The opinions of this Court show that the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.") (emphasis original); *See also Barber v. Page,* 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right."). Other courts have also so noted. *See Wallace v. Rivard,* No. 14-14535, 2016 WL 3055617, at * 5 (E.D. Mich. May 31, 2016) (observing that "[c]ourts in other circuits have consistently held that the Confrontation Clause does not apply to pre-trial hearings"). Because there is no right to compulsory process or confrontation at a pre-trial evidentiary hearing, any objection on this ground would have been meritless. Defense counsel was not required to raise meritless objections. *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

Petitioner also appears to argue that trial counsel was ineffective for failing to challenge the legality of his arrest.

As mentioned when addressing petitioner's first claim, *supra*, petitioner does not identify any evidence other than his own body that was seized during this allegedly unlawful arrest. Thus, the mere fact that petitioner may have been arrested on a defective arrest warrant would not prevent him from being prosecuted and convicted of this offense. Failing to file a frivolous motion to dismiss does not constitute ineffective assistance of counsel. *See Goldsby v. U.S.,* 152 F. App'x 431, 438 (6th Cir. 2005). A challenge to the legality of petitioner's arrest would not have resulted in his release from custody. Counsel was not ineffective for failing to file a motion to dismiss on this basis. *See Friday v. Pitcher,* 200 F. Supp. 2d 725, 738–39 (E.D. Mich. 2002).

Petitioner also claims that trial counsel was ineffective for failing to contest his arrest and detention on *Miranda* grounds.

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436,

444 (1966). No statements by petitioner were admitted at trial. *People v. Green,* No. 14-000470-FH, * 2 (ECF No. 8-14, PageID. 1266). There was nothing to suppress. Because no statement was ever admitted against petitioner, trial counsel was not ineffective for failing to challenge petitioner's detention on the ground that he was not given his *Miranda* warnings. *See United States v. Self*, 100 F. Supp. 3d 773, 778 (D. Ariz. 2015).

In a related vein, petitioner claims that trial counsel was ineffective for failing to move to suppress the photograph of petitioner taken by Sergeant Ortiz at the police station which was later used during the second photographic line-up, in which Ms. Whitney identified petitioner as her assailant. Petitioner claims that this photograph should have been suppressed as a fruit of an illegal arrest because he was effectively arrested when he showed up at the police station.

The evidence at trial establishes that petitioner voluntarily showed up at the police station. He was not arrested at that point or placed in handcuffs or otherwise detained. Petitioner was not told he was a suspect or that he was not free to leave; in fact, petitioner was allowed to leave after the photograph was taken. Under these circumstances, petitioner

was not under arrest when he was at the police station. *See, e.g., Young v. Renico*, 346 F. App'x 53, 58 (6th Cir. 2009). Because there was no basis for asserting that petitioner was illegally detained by the police when he agreed to show up at the police station, petitioner was not denied the effective assistance of counsel by his counsel's failure to challenge the admissibility of his photograph taken by Sergeant Ortiz on this basis, where counsel may have reasonably determined that a motion based upon an illegal arrest claim would have been meritless. *See Reedus v. Stegall,* 197 F. Supp. 2d 767, 782 (E.D. Mich. 2001).

Petitioner next contends that trial counsel was ineffective for failing to call Henrietta Barber (the owner of the black Ford) and Velvetann Jones (the owner of the blue Buick) "concerning who was driving those vehicles on the morning of the offense."

Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been. In the absence of such proof, the petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the

second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Petitioner next claims that his counsel was ineffective for failing to object to what petitioner argues was a misleading statement made by the prosecutor during closing argument that officers observed petitioner and his girlfriend driving away from his residence in the black Ford and blue Buick. Green claims that the officer conducting the surveillance, Officer Howard, testified that he could not identify who was driving either vehicle. But Officer Howard later testified that the person later identified as petitioner "appeared to be" the same person as the male he observed leave his residence and drive away in a blue Buick. ECF No. 8-8, PageID. 756–57. Later, on cross, he confirmed (through the use of a double negative) that he was not testifying that the man he saw enter the blue Buick was not petitioner. *Id.*, PageID. 760.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Likewise, it is improper for a

prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

The prosecutor's remarks in closing arguments were based on reasonable inferences from the evidence. Because the prosecutor's remarks were not improper, counsel was not ineffective for failing to object. *Slagle v. Bagley* , 457 F. 3d 501, 528 (6th Cir. 2006).

Petitioner finally argues that trial counsel was ineffective for failing to object to the delayed disclosure of the videotape which showed the actual attempted abduction. Petitioner argues that the prosecutor violated the dictates of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) by failing to turn over this evidence sooner to the defense.

Under *Brady,* the prosecution must disclose evidence "in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie,* 480 U.S. 39, 57 (1987). To establish a *Brady* violation, a defendant must show: "[1] the prosecutor suppressed evidence; [2] that such evidence was favorable to the defense;

and [3] that the suppressed evidence was material." *Carter v. Bell,* 218 F.3d 581, 601 (6th Cir. 2000). Evidence is material only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Ritchie,* 480 U.S. at 57. Where the prosecution ultimately hands over the *Brady* material that could be used to impeach a witness, however, there is no violation "so long as the defendant is given [the] impeachment material, even exculpatory impeachment material, in time for use at trial." *United States v. Presser,* 844 F.2d 1275, 1283 (6th Cir. 1988); *see also United States v. Davis,* 306 F.3d 398, 421 (6th Cir. 2002) ("Thus, *Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose.") (quotation omitted).

Only where the defendant has been prejudiced by the delay in disclosure is *Brady* violated. *Davis*, 306 F.3d at 421. To establish prejudice, "a defendant must show what he would have done differently had he been given more time to address the *Brady* evidence, and specifically how, had the evidence been given to the defendant earlier, a reasonable probability exists that the result of the defendant's trial would

have been different." *United States v. Spry*, 238 Fed App'x 142, 148 (6th Cir. 2007) (citations omitted). The ultimate touchstone of this inquiry is, critically, "whether in [the] absence [of the evidence] [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). A "reasonable probability" of a different result is thus demonstrated when the government's evidentiary suppression "undermines confidence in the outcome of the trial." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 680 (1985) (opinion of Blackmun, J.)).

Petitioner claims that the video evidence was not disclosed until the day of trial. Petitioner contends that his attorney should have objected to this delayed disclosure because it prevented him from making a pretrial motion seeking the appointment of an independent video forensic expert to analyze the tapes. ECF 1, PageID 33. The trial court addressed this issue in denying Defendant's Motion for Relief from Judgment and found that "the trial record does not support that there was any improper delay or that any such delay was outcome determinative." *Id* at PageID 103.

In his Petition, Petitioner capably describes how he believes the video—without the aid of any expert analysis—could be used to support

his defense ("Petitioner submits that what the recording shows is contrary to complainant's testimony", *Id* at PageID.35). Petitioner clearly had the ability during trial to have his counsel explain to the jury what he believed to be the exculpatory value of the video, but did not do so. Moreover, Petitioner has offered no evidence to this Court that there exists an expert who would have challenged the accuracy or reliability of the videotape. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F. 3d 662, 672 (6th Cir. 2006). Under these circumstances, Petitioner has failed to show both that he was prejudiced by the allegedly delayed disclosure of the video and, given that he was identified in-court by the victim, a reasonable probability that the result of his trial would have been different had he had access to the video earlier. Because Petitioner cannot substantiate a *Brady* violation, he has not shown that trial counsel was ineffective for failing to object or to move for a mistrial based upon a *Brady* violation. *See, e.g.*, *McMeans v. Brigano,* 228 F. 3d 674, 684–85 (6th Cir. 2000).

Petitioner in his fourth claim alleges that appellate counsel was ineffective for failing to raise a number of his claims that he now raises.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). A habeas court must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (per curiam) ("Given AEDPA, both Etherton's appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").

Petitioner's claims are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Petitioner also claims that appellate counsel was ineffective for failing to provide petitioner with the pre-trial and trial transcripts, presumably so that petitioner could file his own *pro per* appellate brief.

Petitioner fails to state a claim upon which relief can be granted. A criminal defendant has no federal constitutional right to self-

representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of California,* 528 U.S. 152, 163 (2000).  This is because the rights protected by the Sixth Amendment, including the right to self-representation, are rights that are available to prepare for trial and at the trial itself.  However, the Sixth Amendment does not include any right to appeal. *Id.* at 160.  The Supreme Court also rejected the idea that the right to self-representation on appeal could be grounded in the Due Process Clause [of the Fourteenth Amendment], because "[U]nder the practices that prevail in the Nation today, however, we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding". *Martinez,* 528 U.S. at 161.

Thus, there is no constitutional entitlement to submit a *pro se* appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel. *See McMeans v. Brigano,* 228 F. 3d at 684.  By accepting the assistance of counsel, the criminal appellant waives his right to present *pro se* briefs on direct appeal. *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996); *see also Henderson v.*

*Collins,* 101 F. Supp. 2d 866, 881 (S.D. Ohio 1999); *aff'd in part, vacated in part on other grounds* 262 F.3d 615 (6th Cir. 2001).

Because petitioner was represented by appellate counsel, any failure by the trial court or appellate counsel to provide petitioner with the trial transcripts so that he could prepare his own *pro se* brief would not violate petitioner's constitutional rights. *See U.S. v. Dierling*, 131 F.3d 722, 734, n.7 (8th Cir. 1997); *Foss v. Racette*, No. 1:12-CV-0059, MAT 2012 WL 5949463, * 4 (W.D.N.Y. Nov. 28, 2012); *see also Willis v. Lafler*, No. 05-74885, 2007 WL 3121542, * 18 (E.D. Mich. Oct. 24, 2007). Petitioner is not entitled to relief on his fourth claim.

### D. The Court denies petitioner's remaining motions.

Petitioner has filed a number of motions which remain pending before the Court.

Petitioner filed a motion for an evidentiary hearing. ECF No. 18.

A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459–60 (6th Cir. 2001). In light of the fact that petitioner's claims are meritless, he is not entitled to an evidentiary hearing. The motion is denied.

Petitioner has filed a motion for the production of documents. ECF No. 20. This Court has already determined that petitioner's allegations, even if true, would not entitle him to habeas relief. In light of the fact that petitioner's claims are without merit, petitioner is not entitled to seek discovery in support of his claims. *See Sellers v. United States,* 316 F. Supp. 2d 516, 523 (E.D. Mich. 2004). The motion is denied.

Petitioner has filed two motions in which he seeks summary judgment. Given this Court's determination that petitioner is not entitled to federal habeas relief, the motions for summary judgment are denied as moot. *See Ortiz v. Williams,* 489 F. Supp. 2d 381, 386 (D. Del. 2007).

## IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues

presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. **ORDER**

Based upon the foregoing, **IT IS ORDERED** that:

(1)    The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2)    The motion to amend caption (ECF No. 24) is **GRANTED.**

       Petitioner's remaining motions (ECF No. 18, 20, 21, 23) are **DENIED.**

(3)    A certificate of appealability is **DENIED.**

(4)    Leave to appeal *in forma pauperis* is **GRANTED**.

s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

**Dated:** January 31, 2020